UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ERIN GEE,                                                    17 Civ. _4689_

                   Plaintiff,                      COMPLAINT

    -against-

CBS BROADCASTING INC. & CBS NEWS INC.,          PLAINTIFF DEMANDS
                                                A TRIAL BY JURY

                   Defendants.

-----------------------------------------------------------------x

Plaintiff Erin Gee ("Gee" or "plaintiff"), by her counsel the Law Office of Kevin Mintzer, P.C., complaining of defendants CBS Broadcasting Inc. and CBS News Inc. (collectively, "CBS" or "defendants"), alleges as follows:

<u>NATURE OF CLAIM</u>

1.      This action is brought to remedy sex discrimination and retaliation for opposition to unlawful discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "NYCHRL").

2.      After working as an associate director and other positions on the *CBS Evening News* for approximately 17 years, Erin Gee complained of gender discrimination when she was passed over for the opportunity to be substitute director on the program in favor of a man. Approximately three weeks later, defendants informed plaintiff that she was being removed from the *CBS Evening News* and was being replaced by a less qualified employee who had been

reporting to plaintiff. Plaintiff then spent many weeks with no job at all, and she was eventually demoted to CBS' weekend newscast.

3.     Gee further opposed defendants' discriminatory and retaliatory treatment by engaging counsel and filing a charge of discrimination with the Equal Employment Opportunity Commission, but this only led to more retaliation by defendants. Following plaintiff's demotion approximately 2 1/2 years ago, defendants have given plaintiff full-time duties for only two days per week and have left her with virtually nothing to do for the other three days that she reports to work. Plaintiff's income since the demotion has been reduced by nearly 50%.

4.     Plaintiff brings this action to stop defendants' ongoing discrimination and retaliation and to remedy the damage that she has suffered. Plaintiff seeks declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII and the NYCHRL.

## PARTIES, JURISDICTION AND VENUE

5.     Defendant CBS Broadcasting Inc. is a television network and a wholly owned subsidiary of CBS Corporation. CBS Broadcasting Inc. is a New York corporation with its principal place of business in New York.

6.     Defendant CBS News Inc. is the news division of CBS Broadcasting Inc. CBS News Inc. is a Delaware corporation with its principal place of business in New York.

7.     CBS Broadcasting Inc. and CBS News Inc. are plaintiff's "employer" within the meaning of Title VII and the NYCHRL.

8.     Gee is a forty-three-year-old woman. She is a citizen of the State of New Jersey. She has worked for CBS from 1996 to the present within the City of New York.

9.     On or about April 14, 2015, plaintiff filed a charge of gender discrimination and retaliation with the United States Equal Opportunity Employment Commission ("EEOC") based on the facts alleged herein.  Plaintiff received a notice of right to sue from the EEOC on or about March 27, 2017, and has filed this action within 90 days of receiving that notice.  Plaintiff has complied fully with the administrative prerequisites of Title VII.

10.     The Court has jurisdiction over plaintiff's Title VII claims under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367. In addition, because the parties are citizens of different states and the amount in controversy exceeds $75,000, the Court would also have diversity jurisdiction over plaintiff's NYCHRL claims.

11.     Pursuant to § 8-502(c) of the NYCHRL, plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

12.     As a substantial part of the events giving rise to the claims occurred within the Southern District of New York, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2).

FACTUAL ALLEGATIONS

A.     Gee's Background at CBS

13.     Plaintiff has approximately 21 years of experience in broadcast journalism, all working for CBS.  After receiving her bachelor's degree, she began working for CBS in 1996.

14.     Gee began working on the *CBS Evening News* as a production associate in 1998. In 2000, she became an associate director on the broadcast. Gee became a full-time staff employee in 2003.

15.      While working as an associate director, plaintiff gained experience in many aspects of news direction, including producing videotape packages for breaking news events, managing the videotape hard news center and online editors for incoming domestic and foreign feeds, supervising play-out channels of news packages, and directing live multi-camera studio features. Plaintiff's daily responsibilities as an associate director included managing 14 people in the control room under tight deadlines, overseeing creative design by graphic artists, and collaborating with senior producers and on-air correspondents with the goal of turning complex story concepts into understandable, visually appealing television pieces.  Gee had more responsibilities than any other associate director on the *CBS Evening News*.

16.      For many years, plaintiff sought the opportunity to become a full director.  In 2012, plaintiff and Robert Klug, Executive Director for CBS News, agreed that Gee would train as a director on the weekend edition of the CBS Evening News.  However, Klug told plaintiff that she would need to train on her "own time" and would not be paid for additional work.

17.      Plaintiff nevertheless welcomed the opportunity and, for approximately six months, she successfully trained as a director on the weekend *CBS Evening News*.

18.      In or about November 2013, Klug informed plaintiff that the Directors Guild of America had protested the unpaid arrangement, and that her training would terminate immediately.

19.      On information and belief, Klug decided that he was not going to afford plaintiff the opportunity to become a director, but he did not want to admit that he had encouraged plaintiff to work an extra day without pay for six months for no reason.

20.     Plaintiff's previous dealings with Klug gave her good reason to believe that he held sexist views about women in the workplace.  For example, in 2011, Klug advised Gee that she should "have sex" with a video editor who had been difficult to work with to "break the ice."

21.     Moreover, shortly after Klug became Executive Director, she was told by her then-supervisor, a man, that Klug had asked him whether he had had sex with Gee or the other women under his supervision.

B.     Denial of Substitute Director Role and Plaintiff's Complaints of Discrimination

22.     In or about November 2014, CBS hired TJ Asprea as the Director of the *CBS Evening News*.  Shortly after Asprea started in the position, plaintiff told him that she wanted to help him, that she was still interested in becoming a director, and that she would welcome the opportunity to work as a substitute director when he was away from the broadcast. Asprea responded positively to this, although he suggested that plaintiff would have to train to be a replacement director on the weekend program because, according to him, the "weekday is not a place to learn."

23.     Over the next two months, while Gee worked for Asprea, he consistently praised her performance and contributions to the broadcast. He did not voice any concerns about plaintiff's work or her interactions with colleagues.

24.     On January 7, 2015, Asprea asked plaintiff to a meeting with Klug and himself. At that meeting, Asprea informed Gee that he was going to personally train Scott Berger, a male associate director, to serve as a substitute director. Asprea said that for plaintiff to be even considered for training as a director, she would first need to be trained for a control room associate director position. Plaintiff replied that she had previously worked as an associate director in the control room over ten years ago, and she did not understand why she would have

to be re-trained for such a position.  She also informed Asprea – and reminded Klug – that she had already trained, without pay, for the director role.

25.      Two days later, on January 9, 2015, at Gee's request, she again met with Asprea in his office. Plaintiff asked why Asprea had decided to personally train Berger as a director, after he had recently told her that the weekday broadcast was not suitable for training.  Plaintiff also stated, in substance, that it was not reasonable to expect her to re-train for an associate director position she had mastered many years ago, particularly after she had already trained for the director position without compensation.

26.      During the same meeting, plaintiff told Asprea that the preferential treatment afforded to Berger appeared to be discriminatory. In addition, because Klug had apparently been involved in the decision to make Berger a substitute director instead of her, Gee also informed Asprea of Klug's history of inappropriate sexual comments. Immediately after plaintiff raised the issue of discrimination, Asprea became visibly uncomfortable and ended the meeting.

27.      CBS stated to the EEOC that it chose Berger to be trained as a substitute director "based on [Berger's] 30 years of experience as an Associate Director in the primary control room." In fact, at the time of the decision, Berger had only about 13 years of experience as an associate director, which was less experience than plaintiff had in the role.

C.     CBS Removes Plaintiff from the *CBS Evening News*

28.      Plaintiff was out of work on vacation from January 19 through January 23, 2015. She returned to the office on Monday, January 26, 2015.

29.      On January 29, 2015, Frank Governale, Vice President of Operations, asked to meet with Gee. At the meeting, he informed her that she was being removed from her position as an associate director on the *CBS Evening News*.  Governale said that Gee's duties were going to

be assumed by Jill Baker, who had worked under plaintiff's supervision in the graphics control room.

30.     When plaintiff asked why this decision was made, Governale referred to plaintiff's past "behavioral problems."

31.     Contrary to Governale's statement, Gee did not have any "behavioral problems" while at CBS. Indeed, throughout her lengthy tenure with the company, she had never been warned or reprimanded for her behavior at work.

32.     CBS stated to the EEOC that unnamed employees on the *CBS Evening News* crew claimed that plaintiff had "bullied them and treated them in an abusive manner." CBS further stated that plaintiff "had never been disciplined for such behavior, but she had been counseled that such behavior was not appropriate in the workplace."

33.     CBS' statements to the EEOC are false. In fact, plaintiff had not treated anyone in a bullying or abusive manner, and she had never been counseled that her behavior was inappropriate in the workplace.

34.     There is no legitimate, non-discriminatory and non-retaliatory explanation for defendants' decision to remove plaintiff from the *CBS Evening News*. As stated above, Aspera had acknowledged to plaintiff that he was pleased with her work. Moreover, Gee was substantially more qualified than Baker based on her skills and experience.

35.     At the time of the decision, plaintiff directed multi-camera taped and live studio features and national news segments. Baker had not. Plaintiff successfully trained as a full director on the *Weekend News*. Baker had not.  In addition, Gee was an associate producer before she became an associate director, and she had strong journalistic skills, editorial judgment and

knowledge of current events and newsmakers. Baker did not have a background in writing or making editorial judgments.

36.  CBS stated to the EEOC that Baker was chosen over plaintiff to remain on the *CBS Evening News*, in part, because "it was Asprea's observation that Baker had a better rapport with the technical crew and the Graphic Artists [and] she was a better communicator and creatively strong."

37.  Asprea could not have made such a judgment because, other than one week that Gee took vacation, Asprea did not directly work or communicate with Baker before he removed Gee from the program. Rather, all of Baker's work went through plaintiff before going on to Asprea.

38.  It is also not true that plaintiff had a bad rapport with the cast and crew of the *CBS Evening News*. Plaintiff maintained a positive working relationship with her colleagues. However, unlike Baker, who held a more junior role, plaintiff was sometimes required to give direction and enforce rules within the control room.  Had Gee been male, defendants would have praised plaintiff for doing so.

D.  CBS Further Retaliates Against Plaintiff After
     She Engages in Additional Protected Activity

39.  On February 10, 2015, plaintiff's attorney sent a letter to CBS' in-house counsel stating, in substance, that CBS had discriminated against plaintiff on the basis of gender and retaliated against her for opposing discrimination.

40.  On April 14, 2015, plaintiff filed a charge of discrimination and retaliation with the EEOC.

41.  Because plaintiff engaged in these protected activities, CBS has continued to marginalize and retaliate against her.

8

42.     After CBS removed plaintiff from the *CBS Evening News*, she was not assigned to any broadcast for approximately seven weeks. Although Gee came to CBS' offices five days per week during this period, she had no duties at all.

43.     On or about March 22, 2015, CBS finally assigned Gee to work two days per week on the *CBS Evening Weekend News*. When Director of Operations Phil Selby originally informed plaintiff of this assignment, he said plaintiff would also soon be assigned to the *CBS Morning News* for three days per week.

44.     Despite Selby's statement, plaintiff was never assigned to the *CBS Morning News*.

45.     From March 22, 2015 until approximately May 1, 2016, plaintiff had duties on Saturday and Sunday on the *CBS Evening Weekend News*, but she had no duties on the three weekdays that she reported to work.

46.     Plaintiff was not given work even though, during this period, defendants hired freelance associate directors to work on the weekday *CBS Evening News*. When plaintiff inquired about this, the scheduling manager for the program told plaintiff that she would never be given an assignment on the *CBS Evening News*.

47.     On or about May 1, 2016, CBS cancelled the *CBS Evening Weekend News* and replaced it with a pared-down broadcast known as the *CBS Weekend News*.

48.     Gee was not initially assigned to the *CBS Weekend News*. From approximately May 2, 2016 until July 24, 2016, plaintiff reported to work for five days a week and once again had no duties.

49.     In or about June 2016, Gee spoke about her situation, including the fact that she had no duties, with an employee in CBS' office of Staff Development and Diversity Initiatives.

The employee said that she would try to help. However, the employee reported back to plaintiff that, according to CBS' human resources department, nothing could be done to find plaintiff a new assignment because CBS was "waiting to see what happens with the lawyers." Human resources also apparently suggested that perhaps Gee's "lawyer could get her something better than what we can do."

50.     As of July 24, 2016, plaintiff was reassigned to *CBS Weekend News* and resumed working two days per week on the weekend. Plaintiff continued not to have any other duties for the remaining days that she reported to work, which were Monday through Wednesday.

51.     On or about April 10, 2017, plaintiff was assigned one hour of work per day on Monday through Wednesday. Other than those three hours, plaintiff continues not to have any duties to perform for three out of five days that she reports to work.

52.     As a result of defendants' discriminatory and retaliatory treatment of plaintiff, her annual earnings in 2015, 2016 and 2017 are approximately 45% less than her earnings in 2014, before she was removed from the *CBS Evening News*.

53.     Defendants also continue to treat plaintiff poorly because of her gender. On April 3, 2017, plaintiff was in the office of a scheduling supervisor seeking an assignment. While plaintiff was present, another CBS employee walked by and briefly spoke to the scheduling supervisor.  The employee was holding a phone, which could be seen by plaintiff but not the supervisor. On the phone was a video of a woman performing oral sex on a man.

54.     Plaintiff immediately when to human resources to complain about this display of pornography at work. However, human resources eventually told plaintiff that because the supervisor did not see the video and the employee denied the charge, they could not conclude that any CBS policy was violated.

## FIRST CAUSE OF ACTION

### Gender Discrimination Under Title VII

55.     Plaintiff repeats and realleges paragraphs 1-54 as if fully set forth herein.

56.     By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of Title VII.

57.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' discriminatory acts.

58.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

### Gender Discrimination Under NYCHRL

59.     Plaintiff repeats and realleges paragraphs 1-58 as if fully set forth herein.

60.     By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of the NYCHRL.

61.     Plaintiff is now suffering and will continue to suffer monetary damages and damages for monetary anguish and humiliation as a result of defendants' discriminatory acts.

62.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

11

THIRD CAUSE OF ACTION

Retaliation Under Title VII

63.     Plaintiff repeats and realleges paragraphs 1-62 as if fully set forth herein.

64.     By the acts and practices described above, defendants retaliated against plaintiff because she opposed unlawful discrimination and made a charge of discrimination, in violation of Title VII.

65.     Plaintiff is now suffering and will continue to suffer monetary damages and damages for mental anguish and humiliation as a result of defendants' retaliatory acts.

66.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

FOURTH CAUSE OF ACTION

Retaliation Under NYCHRL

67.     Plaintiff repeats and realleges paragraphs 1-66 as if fully set forth herein.

68.     By the acts and practices described above, defendants retaliated against plaintiff because she opposed unlawful discrimination and filed a charge of discrimination, in violation of the NYCHRL.

69.     Plaintiff is now suffering and will continue to suffer monetary damages and damages for mental anguish and humiliation as a result of defendants' retaliatory acts.

70.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a)      Declaring the acts and practices complained of herein in violation of Title VII and the NYCHRL;

(b)      permanently restraining these violations;

(c)      directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)      directing defendants to place plaintiff in the position she would be in but for defendants' discriminatory and retaliatory treatment of her, and to make her whole for all earnings she would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, and other lost compensation and benefits;

(e)      awarding plaintiff compensatory damages for her emotional distress and humiliation;

(f)      awarding plaintiff punitive damages;

(g)      awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and the costs of this action;

(h)      awarding plaintiff damages relating to adverse tax consequences; and

(i)      awarding such other and further relief as the Court deems necessary and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       June 21, 2017

                                   THE LAW OFFICE OF
                                   KEVIN MINTZER, P.C.

By: _____
                                   Kevin Mintzer
                                   Attorney for Plaintiff Erin Gee
                                   1350 Broadway – Suite 1400
                                   New York, New York 10018
                                   Tel: (646) 843-8180
                                   km@mintzerfirm.com